UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARILYN RAE BASKIN and ESTHER FULLER; BONNIE EVERLY and LINDA JUDKINS; DAWN LYNN CARVER and PAMELA RUTH ELEASE EANES; HENRY GREENE and GLENN FUNKHOUSER, individually and as parents and next friends of C.A.G.; NIKOLE QUASNEY, and AMY SANDLER, individually and as parents and next friends of A.Q.-S. and M.Q.-S., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:14-cv-00355-RLY-TAB |
| PENNY BOGAN, in her official capacity as BOONE COUNTY CLERK; KAREN M. MARTIN, in her official capacity as PORTER COUNTY CLERK; MICHAEL A. BROWN, in his official capacity as LAKE COUNTY CLERK; PEGGY BEAVER, in her official capacity as HAMILTON COUNTY CLERK; WILLIAM C. VANNESS II, M.D., in his official capacity as the COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH; and GREG ZOELLER, in his official capacity as INDIANA ATTORNEY GENERAL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

1

Plaintiffs, Amy Sandler ("Amy"), Nikole ("Niki") Quasney, A.Q.-S. and M.Q.-S asked this court to grant them a temporary restraining order ("TRO") and a preliminary injunction requiring the State of Indiana to recognize the out-of-state marriage of Amy and Niki. ([Filing No. 31](#)). The court granted the TRO, which expires on May 8, 2014. ([Filing No. 44](#); [Filing No. 51](#)). On May 2, 2014, the court held a hearing on the pending motions for summary judgment and preliminary injunction. For the reasons set forth below, the court **GRANTS** Plaintiffs' motion for a preliminary injunction.

I.      **Background**

Niki and Amy have been in a loving and committed relationship for more than thirteen years. (Declaration of Nikole Quasney ("Quasney Dec.") ¶ 2, [Filing No. 32-2](#)). They are the parents to two very young children, Plaintiffs, A.Q.-S. and M.Q.-S. (*Id.* at ¶ 2). On June 7, 2011, Amy and Niki entered into a civil union in Illinois, and on August 29, 2013, they were legally married in Massachusetts. (*Id.* at ¶ 3).

In late May of 2009, Niki was diagnosed with Stage IV Ovarian cancer, which has a probable survival rate of five years. (*Id.* at ¶ 9). Since June 2009, Niki has endured several rounds of chemotherapy; yet, her cancer has progressed to the point where chemotherapy is no longer a viable option. Niki is receiving no further treatment; her death is imminent.

Niki and Amy joined the other Plaintiffs to this lawsuit to present a facial challenge to Indiana Code 31-11-1-1, titled "Same sex marriages prohibited" and states:

> (a) Only a female may marry a male. Only a male may marry a female.
> (b) A marriage between persons of the same gender is void in Indiana even if the marriage is lawful in the place where it is solemnized.

Because Niki is fighting a fatal disease and is nearing the five year survival rate, she and Amy requested that the court issue a preliminary injunction preventing Indiana from enforcing Indiana Code § 31-11-1-1(b) as applied to them, and requiring the State of Indiana, through the Defendants, to recognize Niki as married to Amy on her death certificate.

## II.     Preliminary Injunction Standard

A preliminary injunction "is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008) (citations omitted). The court analyzes a motion for a preliminary injunction "in two distinct phases: a threshold phase and a balancing phase." *Id.* Under the threshold phase for preliminary injunctive relief, a plaintiff must establish – and has the ultimate burden of proving by a preponderance of the evidence – each of the following elements: (1) some likelihood of success on the merits, (2) absent a preliminary injunction, she will suffer irreparable harm, and (3) traditional legal remedies would be inadequate. *Id.* at 1806. To satisfy the first requirement, a plaintiff's chance of success must be more than negligible. *See Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986).

"If the court determines that the moving party has failed to demonstrate any one of these [] threshold requirements, it must deny the injunction." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086 (citation omitted). If, on the other hand, the court determines the moving party has satisfied the threshold phase, the court then proceeds to the balancing phase of the analysis. *Id.* The balancing phase requires the court to

balance the harm to the moving party if the injunction is denied against the harm to the nonmoving party if the injunction is granted. *Id.* In so doing, the court utilizes what is known as the sliding scale approach; "the more likely the [movant] will succeed on the merits, the less the balance of irreparable harms need favor the [movant's] position." *Id.* Additionally, this stage requires the court to consider "any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')." *Id.*

## III. Discussion

Before reaching the merits, Defendants pose two challenges that the court must initially address. First, they argue the Plaintiffs, Niki and Amy, lack standing to assert preliminary injunctive relief. Second, in light of the Supreme Court's recent decision in *Herbert v. Kitchen*, 134 S.Ct. 893 (2013), they argue preliminary injunctive relief is inappropriate.

### A. Standing

To have standing a plaintiff "must present an injury that is concrete, particularized, and actual or imminent, fairly traceable to the defendant's challenged behavior, and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). Defendants argue that the harms alleged by Plaintiffs as arising from Indiana's non-recognition statute are not concrete and particularized, nor fairly traceable to them. Thus, according to Defendants, a preliminary injunction cannot favorably address Plaintiffs' harms.

4

The Defendants in this case, the Attorney General; the County Clerks from Boone, Porter, Lake, and Hamilton Counties; and the Commissioner of the Indiana Department of Health, are statutorily required to enforce Indiana Code § 31-11-1-1 by not recognizing the marriage. *See* Ind. Code § 4-6-1-6; *see also* Ind. Code § 31-11-4-2; *see also* Ind. Code § 16-37-1-3 and Ind. Code § 16-37-1-3.1. The injury to Plaintiffs resulting from Indiana's non-recognition statute harms the Plaintiffs in numerous tangible and intangible ways, including causing Niki to drive to Illinois where her marriage will be recognized in order to receive medical care and the dignity of marital status. Thus, a preliminary injunction enjoining Defendants from enforcing the non-recognition statute against Plaintiffs will, therefore, redress their claimed injury. Therefore, the court finds that the Plaintiffs have standing to seek a preliminary injunction.

**B.     Is preliminary injunctive relief appropriate?**

Citing *Herbert v. Kitchen*, Defendants contend that Plaintiffs' demands for preliminary relief are inappropriate under Federal Rule of Civil Procedure 65. *Herbert v. Kitchen*, 134 S.Ct. 893 (Jan. 6, 2013). In that case, the Supreme Court issued a stay of the District of Utah's permanent injunction requiring officials to issue marriage licenses to same-sex couples and to recognize all same-sex marriages performed in other states. Since that ruling, all decisions by federal district courts have been stayed while the requisite preliminary and permanent injunctions are appealed to the respective circuit courts.

Nevertheless, the court does not interpret the fact that the other federal courts are staying injunctions to mean that preliminary injunctive relief is inappropriate in this case.

Nor does the court agree that a stay by the Supreme Court of such a broad injunction conclusively determines that the Plaintiffs here are not entitled to the narrow form of injunctive relief they seek. Additionally, despite these stays, no court has found that preliminary injunctive relief is inappropriate simply because a stay may be issued. Therefore, the court finds that preliminary injunctive relief is still appropriate in this matter and proceeds to that analysis.

### C. Is there a likelihood of success on the merits?

Plaintiffs argue that Indiana's statute prohibiting the recognition of same-sex marriages and in fact, voiding such marriages, violates the Fourteenth Amendment's Due Process Clause and Equal Protection Clause.

#### 1. Equal Protection Clause

Plaintiffs argue that Indiana's non-recognition statute, codified at Indiana Code § 31-11-1-1(b), which provides that their state-sanctioned out-of-state marriage will not be recognized in Indiana and is indeed, void in Indiana, deprives them of equal protection. The Equal Protection Clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV, § 1.

The theory underlying Plaintiffs' claim is the notion that Indiana denies same-sex couples the same equal rights, responsibilities and benefits that heterosexual couples receive through "traditional marriage." According to Defendants, the State's interest in traditional marriage is to encourage heterosexual couples to stay together for the sake of any unintended children that their sexual relationship may produce, and to raise those children in a household with both male and female role models. The State views

6

heterosexual couples who, for whatever reason, are not capable of producing children, to further the state's interest in being good male-female role models.

In the wake of the Supreme Court's decision in *United States v. Windsor*, 134 S.Ct. 2675 (2013), district courts from around the country have rejected the idea that a state's non-recognition statute bears a rational relation to the state's interest in traditional marriage as a means to foster responsible procreation and rear those children in a stable male-female household. *See Tanco*, 2014 WL 997525 at * 6; *see also Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014) (finding there is no rational link between excluding same-sex marriages and "steering 'naturally procreative' relationships into marriage, in order to reduce the number of children born out of wedlock and reduce economic burdens on the State); *see also DeBoer v. Snyder*, No.1:12-cv-10285, 2014 WL 1100794, * 2 (E.D. Mich. Mar. 21, 2014) (noting that prohibiting same-sex marriages "does not stop [gay men and lesbian women] from forming families and raising children). Indeed, as the court found in its prior Entry, with the wave of persuasive cases supporting Plaintiffs' position, there is a reasonable likelihood that the Plaintiffs will prevail on the merits, even under the highly-deferential rational basis standard of review. *See Henry*, 2014 WL 1418395 at ** 1-2 (noting that since the Supreme Court's ruling in *Windsor*, all federal district courts have declared unconstitutional and enjoined similar bans); *see also Tanco*, 2014 WL 997525 at * 6 ("in light of the rising tide of persuasive post-*Windsor* federal case law, it is no leap to conclude that the plaintiffs here are likely to succeed in their challenge.") The reasons

advanced by the State in support of Indiana's non-recognition statute do not distinguish this case from the district court cases cited above.

The court is not persuaded that, at this stage, Indiana's anti-recognition law will suffer a different fate than those around the country. Thus, the Plaintiffs have shown that they have a reasonable likelihood of success on the merits of their equal protection challenge, even under a rational basis standard of review. Therefore, the court at this stage does not need to determine whether sexual orientation discrimination merits a higher standard of constitutional review.

### 2. Due Process Clause

Plaintiffs assert that they have a due process right to not be deprived of one's already-existing legal marriage and its attendant benefits and protections. *See Obergefell v. Wymyslo*, 962 F. Supp. 2d 968, 978 (S.D. Ohio 2013) (finding that non-recognition invokes "the right not to be deprived of one's already-existing legal marriage and its attendant benefits and protections."); *see also Henry v. Himes*, No. 1:14-cv-129, 2014 WL 1418395, * 9 (S.D. Ohio Apr. 14, 2014) (applying intermediate scrutiny where Ohio is "intruding into and in fact erasing" the marriage relationship); *see also De Leon v. Perry*, No. SA-13-CA-00982-OLG, 2014 WL 715741, ** 21-24 (W.D. Tex Feb. 26, 2014) (applying rational basis review and finding "that by declaring lawful same-sex marriages void and denying married couples the rights, responsibilities, and benefits of marriage, Texas denies same-sex couples who have been married in other states their due process").

Defendants counter that there is no due process right to have one's marriage recognized. According to Defendants, recognition of marriages from other states is only a matter of comity, not a matter of right. *See e.g., Sclamberg v. Sclamberg*, 41 N.E.2d 801 (Ind. 1942) (recognizing parties' concession that their marriage, performed in Russia, was void under Indiana law because they were uncle and niece). Defendants again stress that *Windsor* is a case merely about federalism and did not create a right under the Due Process Clause to have one's marriage recognized.

The court found in its prior ruling that as a general rule, Indiana recognizes those marriages performed out of state. *Bolkovac v. State,* 98 N.E.2d 250, 304 (Ind. 1951) ("[t]he validity of a marriage depends upon the law of the place where it occurs."). This includes recognizing marriages between first cousins despite the fact that they cannot marry in Indiana. *See Mason v. Mason*, 775 N.E.2d 706, 709 (Ind. Ct. App. 2002). Indiana's non-recognition of Plaintiffs' marriage is a departure from the traditional rule in Indiana. Furthermore, the court notes that by declaring these marraiges void, the State of Indiana may be depriving Plaintiffs of their liberty without due process of law. *See e.g. Loving v. Virginia*, 388 U.S. 1, 12 (1967) ("to deny this fundamental freedom on so unsupportable a basis as the racial classification embodied in these statutes, . . . is surely to deprive all of the State's citizens of liberty without due process of law.") Therefore, the court finds that Plaintiffs have shown some likelihood of success on this claim.

    **D.**    **Are any injuries to Plaintiffs irreparable?**

"Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for . . . . [T]he injury must be of a particular nature, so that compensation in

9

money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (internal quotation and citation omitted). Defendants first argue that there is not irreparable harm here, because Plaintiffs have endured these injuries for a substantial period of time. *See Celebration Int'l, Inc. v. Chosum Int'l, Inc.*, 234 F. Supp. 2d 905, 920 (S.D. Ind. 2002) (Though not dispositive, "tardiness weighs against a plaintiff's claim of irreparable harm . . . ."). The court does not find that the requested relief is tardy for two reasons: (1) there has been a recent, substantial change in the law, and (2) in June 2014, Niki will have reached the average survival rate for her disease.

Defendants challenge the Plaintiffs' claim and this court's prior finding that the constitutional injury alleged herein is sufficient evidence of irreparable harm. In support, Defendants rely on cases decided in other circuits. These cases are not binding on this court, but merely persuasive. After a more thorough review of the cases in the Seventh Circuit, the court reaffirms its conclusion that a constitutional violation, like the one alleged here, is indeed irreparable harm for purposes of preliminary injunctive relief. *See Preston v. Thompson*, 589 F.2d 300, 303 n. 3 (7th Cir. 1978) ("[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm."); *see Does v. City of Indianapolis*, No. 1:06-cv-865-RLY-WTL, 2006 WL 2927598, *11 (S.D. Ind. Oct. 5, 2006) (quoting *Cohen v. Coahoma Cnty., Miss.*, 805 F. Supp. 398, 406 (N.D. Miss. 1992) for the proposition that "[i]t has been repeatedly recognized by federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law."); *see also Back v. Carter*, 933 F. Supp. 738, 754 (N.D. Ind. 1996) ("When violations of constitutional rights are alleged, further showing of irreparable injury may

not be required if what is at stake is not monetary damages. This rule is based on the belief that equal protection rights are so fundamental to our society that any violation of those rights causes irreparable harm."); *see also Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (finding irreparable harm when Plaintiffs' Second Amendment rights were likely violated); *see also Hodgkins v. Peterson*, No. 1:04-cv-569-JDT-TAB, 2004 WL 1854194, * 5 (S.D. Ind. Jul. 23, 2004) (granting a preliminary injunction enjoining enforcement of Indianapolis' curfew law as it likely violated the parents' due process rights and finding that "when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.)

Even if a further showing of irreparable harm is required, the court finds that Plaintiffs have met this burden. Niki suffers irreparable harm as she drives to Illinois to receive treatment at a hospital where her marriage will be recognized. In addition, Niki may pass away without enjoying the dignity that official marriage status confers. *See Obergefell v. Kasich*, No. 1:13-cv-501, 2013 WL 3814262, * 7 (S.D. Ohio Jul. 22, 2013) ("Dying with an incorrect death certificate that prohibits Mr. Arthur from being buried with dignity constitutes irreparable harm. Furthermore, Mr. Arthur's harm is irreparable because his injury is present now, while he is alive. A later decision allowing an amendment to the death certificate cannot remediate the harm to Mr. Arthur, as he will have passed away."); *see also Gray v. Orr*, (N.D. Ill. Dec. 5, 2013) ("Equally, if not more, compelling is Plaintiffs' argument that without temporary relief, they will also be deprived of enjoying less tangible but nonetheless significant personal and emotional benefits that the dignity of official marriage status confers."). These are concrete,

11

tangible injuries that are fairly traceable to Defendants and can be remedied by a preliminary injunction.

### E. Balance of Harms and Public Interest

Having satisfied the threshold phase of a preliminary injunction, the court now turns to the balancing phase. Plaintiffs assert that Defendants have not suffered and will not suffer irreparable harm from this preliminary injunction, and that the public interest is served by a preliminary injunction because there is no interest in upholding unconstitutional laws. Defendants counter that while they can point to no specific instances of harm or confusion since the court granted the TRO three weeks ago, the State is harmed in the abstract by not being able to enforce this law uniformly and against Plaintiffs. Defendants argue that the public interest weighs in their favor because (1) the State has a compelling interest in defining marriage and administering its own marriage laws, and (2) the continuity of Indiana's marriage laws avoids potential confusion over a series of injunctions.

As the court has recognized before, marriage and domestic relations are traditionally left to the states; however, the restrictions put in place by the state must comply with the United States Constitution's guarantees of equal protection of the laws and due process. *See Windsor*, 133 S.Ct. at 2691 (citing *Loving v. Virginia,* 388 U.S. 1 (1967)). The State does not have a valid interest in upholding and applying a law that violates these constitutional guarantees. *See Joeiner v. Vill. Of Washington* Park, 378 F.3d 613, 620 (7th Cir. 2004). Although the court recognizes the State's concern that injunctions of this sort will cause confusion with the administration of Indiana's marriage

laws and to the public in general, that concern does not apply here.[1] The court is faced with one injunction affecting one couple in a State with a population of over 6.5 million people. This will not disrupt the public understanding of Indiana's marriage laws.

## IV. Conclusion

The court finds that the Plaintiffs, Amy, Niki, A.Q-S., and M.Q.-S., have satisfied their burden for a preliminary injunction. They have shown a reasonable likelihood of success on the merits, irreparable harm with no adequate remedy at law, that the public interest is in favor of the relief, and the balance of harm weighs in their favor. Therefore, the court **GRANTS** Plaintiffs' motion for a preliminary injunction ([Filing No. 31](#)).

Defendants and all those acting in concert are **ENJOINED** from enforcing Indiana statute § 31-11-1-1(b) against recognition of Plaintiffs', Niki Quasney's and Amy Sandler's, valid out-of-state marriage; the State of Indiana must recognize their marriage. In addition, should Niki pass away in Indiana, the court orders William C. VanNess II, M.D., in his official capacity as the Commissioner of the Indiana State Department of Health and all those acting in concert, to issue a death certificate that records her marital status as "married" and lists Plaintiff Amy Sandler as the "surviving spouse." This order shall require that Defendant VanNess issue directives to local health departments, funeral

---

[1] This argument had more strength when all of the Plaintiffs in the present lawsuit were seeking preliminary injunctive relief, because they (as opposed to Niki and Amy) were never married, and challenged the constitutionality of Indiana's traditional marriage law. The motion for preliminary injunctive relief from the unmarried Plaintiffs ([Filing No. 35](#)) is **WITHDRAWN**; therefore, the court does not see the potential of creating great confusion from the court's grant of the present motion which affects only one couple. Should this injunction be reversed or a permanent injunction not issued at a later time, only the parties to this case may suffer from confusion. The court has faith that their respective attorneys can explain any decisions and effects from those decisions to them.

homes, physicians, coroners, medical examiners, and others who may assist with the completion of said death certificate explaining their duties under the order of this court. This preliminary injunction will remain in force until the court renders judgment on the merits of the Plaintiffs' claims.

In conclusion, the court recognizes that the issues with which it is confronted are highly contentious and provoke strong emotions both in favor and against same-sex marriages. The court's ruling today is not a final resolution of the merits of the case – it is a preliminary look, or in other words, a best guess by the court as to what the outcome will be. Currently, all federal district court cases decided post-*Windsor* indicate that Plaintiffs are likely to prevail. Nevertheless, the strength or weakness of Plaintiffs' case at the time of final dissolution will inevitably be impacted as more courts are presented with this issue.

**SO ORDERED** this 8th day of May 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.